UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 06-50079 |
| versus | JUDGE HICKS |
| ERIC BULLARD | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Before the court is **Defendant's Motion to Suppress (Doc. 12)**. An evidentiary hearing was held on the motion on June 2, 2006. For the reasons that follow, it is recommended that the Motion to Suppress be denied.

**Facts**

The evidence at the hearing establishes the following facts. Officer Henry and Officer Morrison of the Shreveport Police Department were riding in a two-man unit for the Shreveport Police Department. Officer Henry was the driver of the patrol car, and Officer Morrison was the passenger. The officers were on a burglary detail at the time of the traffic stop in question, but they also enforced other laws.

On September 14, 2004, the officers were patrolling an area of Shreveport with a history of criminal activity, including illegal drug activity. The officers were traveling northbound on Ferry Avenue in Shreveport when they heard loud music. As they approached the intersection of Ferry Avenue and Corbett Street, they observed a pickup truck eastbound

on Corbett. The officers identified that vehicle, which was driven by Defendant, as the source of the loud music. The officers positioned their vehicle behind Defendant's truck and confirmed that the loud music was coming from Defendant's vehicle. Officer Henry engaged his overhead emergency lights (which activated his dashboard camera) and made a traffic stop of Defendant's vehicle for playing loud music in violation of Shreveport Code of Ordinances § 58-27. The counter on the videotape shows that the traffic stop began at 13:18:14 or approximately 1:18 p.m.

Once Defendant's vehicle was stopped, Officers Henry and Morrison exited their patrol unit. At the same time, Defendant exited his pickup truck and made contact with Officer Henry near the driver's side rear tire of Defendant's vehicle. While Officer Henry was engaging Defendant in conversation on the driver's side of the vehicle, Officer Morrison slowly walked to the passenger side of the pickup truck to determine whether there were other occupants in the vehicle [13:18:51]. Both the driver's side and passenger side windows of Defendant's pickup truck had been completely rolled down.

While standing just outside of the passenger side window, Officer Morrison peered inside Defendant's vehicle, smelled a strong odor of burned marijuana and observed a loaded revolver on the center console of Defendant's vehicle. To ensure officer safety, Officer Morrison directed Defendant and Officer Henry to stand at the very rear of the pickup truck. [13:19:04]. Officer Morrison testified that he wanted to create more distance between Defendant and the weapon in his vehicle. Officer Morrison then asked Defendant if he had

any weapons in the vehicle. Defendant replied that he did not. Officer Morrison told Defendant that he could see a pistol in plain view on the center console of his truck. Defendant again advised that there were no weapons in his vehicle. Officer Morrison testified (and the video confirms) that Defendant then made a slight move towards the driver's door of his vehicle [13:19:10]. At that point, Defendant was told to "stay put", and Officer Henry conducted a pat down of Defendant's person.

Based on the fact that Defendant had lied to him twice about weapons being in the vehicle, together with a strong odor of burned marijuana coming from the vehicle, Officer Morrison then frisked the interior of the vehicle for additional weapons. When he opened the center console of the vehicle, he observed a clear plastic bag that contained approximately 30 grams of crack cocaine. Officer Morrison then exited the vehicle, placed Defendant in custody and advised Defendant of his Miranda rights.

Knowing that felony drug charges were going to be made against Defendant, Officer Morrison decided to impound Defendant's vehicle and conduct an inventory search pursuant to the impoundment. As he was inventorying the vehicle, he found a brown paper bag inside the center console. The brown paper bag contained approximately 50 clear plastic baggies that are commonly used to package narcotics. The bags were empty, but in the same brown paper bag, there were two bottles: a vitamin bottle and an aspirin bottle. The vitamin bottle was opened and it was found to contain approximately 142 individually packaged rocks of crack cocaine. When the aspirin bottle was opened, it was found to contain 118 loose rocks

of crack cocaine that had not been packaged. The center console also contained additional .38 caliber bullets that matched the bullets in the revolver in Defendant's vehicle.

Post-Miranda, Defendant advised the officers that he knew the weapon was in the vehicle, but he denied knowledge of the narcotics. Defendant stated that his nephew had borrowed his vehicle and that the narcotics might belong to his nephew.

Other than the noise violation, there was no other reason to conduct a stop of Defendant's vehicle. On November 5, 2004, Defendant pled guilty in Shreveport City Court to a violation of the City's loud music ordinance. Govt. Ex. 2. The parties stipulated (and Govt. Ex. 2 confirms) that Defendant was not represented by counsel in connection with that guilty plea.

The officers never found marijuana or any other source of the smell of the burned marijuana in Defendant's truck. However, post-Miranda, Defendant was asked if he had been smoking marijuana in the vehicle, and he replied that he might have been.

**Arguments**

Defendant's Motion to Suppress argues that the traffic stop of Defendant for the alleged loud music violation was simply a pretext to stop Defendant and search the vehicle for drugs. Defendant points out that the first part of the videotape of his traffic stop contains footage from a prior stop that was made by these same officers just a few minutes prior to the stop of Defendant. Based on the statements of the officers during that prior stop ["everything is squared away in the car"], Defendant assumes that the officers searched that

car, too. Defendant also argues that, because the stop was for loud music, there was no reason for the officers to conduct even a visual search of the interior of the vehicle.

The Government argues that the officers had probable cause to believe a traffic violation had occurred. The Government also argues that, once the stop was made, one of the officers saw a loaded handgun in plain view (which Defendant lied about twice), and he also smelled a strong odor of marijuana coming from the vehicle. The Government argues that those circumstances gave rise to probable cause to search Defendant's vehicle.

**Law and Analysis**

The legality of a traffic stop is analyzed under the framework articulated in <u>Terry v. Ohio</u>, 392 U.S. 1 (1968). <u>See</u> <u>Knowles v. Iowa</u>, 525 U.S. 113, 117 (1998); <u>Berkemer v. McCarty</u>, 468 U.S. 420, 439 (1984); <u>United States v. Brigham</u>, 382 F.3d 500, 506 (5th Cir. 2004)(en banc). Under the two-part <u>Terry</u> reasonable suspicion inquiry, the court must determine whether the officer's action was: (1) "justified at its inception"; and (2) "reasonably related in scope to the circumstances which justified the interference in the first place." <u>Terry</u>, 392 U.S. at 19-20; <u>Brigham</u>, <u>supra</u> at 506-507; <u>U.S. v. Lopez-Moreno,</u> 420 F.3d 420, 429-434 (5th Cir. 2005).

For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. <u>See</u> <u>United States v. Breeland</u>, 53 F.3d 100, 102 (5th Cir.1995). In making a reasonable suspicion inquiry, a court "must look at the

'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002); United States v. Cortez, 449 U.S. 411, 417 (1981). Reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. See, e.g., United States v. Santiago, 310 F.3d 336, 340 (5th Cir.2002). In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. Arvizu, 534 U.S. at 274. However, it is clear that the officer's mere hunch will not suffice. Terry, 392 U.S. at 27. It is also clear that reasonable suspicion need not rise to the level of probable cause. Arvizu, 534 U.S. at 274.

An officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because they are both based on an objective test. The Supreme Court has made it clear that an officer's subjective motivations are irrelevant in determining whether his or her conduct violated the Fourth Amendment. Scott v. United States, 436 U.S. 128, 138 (1978); Devenpeck v. Alford, 543 U.S. 146 (2004) ("Our cases make clear that an arresting officer's state of mind ... is irrelevant to the existence of probable cause. [H]is subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); Whren v. United States, 517 U.S. 806 (1996) ("We think these cases ... foreclose any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved."). On this point, the

Fifth Circuit has stated that "[s]o long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment ...." Goodwin v. Johnson, 132 F.3d 162, 173 (1997).

As for the second prong of the Terry inquiry, generally, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." Brigham, 382 F.3d at 507. In the course of effectuating the stop, a police officer may permissibly examine the driver's license and registration and run a computer check on them to investigate whether the driver has any outstanding warrants and if the vehicle is stolen. Id. at 507-08. An officer may also ask the driver about the purpose and itinerary of his trip. Id. at 508. Indeed, the officer's questions need not even be related to the purpose of the traffic stop, since "[d]etention, not questioning, is the evil at which Terry's second prong is aimed." Id.

Although an officer's inquiry may be wide-ranging, once all relevant computer checks have come back clean, there is no more reasonable suspicion, and, as a general matter, continued questioning thereafter unconstitutionally prolongs the detention. Brigham, 382 F.3d at 510. See also Santiago, 310 F.3d at 341-42; United States v. Jones, 234 F.3d 234, 241 (5th Cir. 2000); United States v. Dortch, 199 F.3d 193, 200 (5th Cir.1999), *corrected on denial of rehearing*, 203 F.3d 883 (5th Cir. 2000). A recognized exception to this rule is that if additional reasonable suspicion arises in the course of the stop and before the initial purpose of the stop has been fulfilled, then the detention may continue until the new

reasonable suspicion has been dispelled or confirmed. See Brigham, 382 F.3d at 507; United States v. Grant, 349 F.3d 192, 196 (5th Cir. 2003).

In this case, the loud music violation of Shreveport City Ordinance 58-27 provided initial justification for the traffic stop. It does not matter that the traffic violation was an incidental reason for the stop or that it might have been a pretext to make contact with the driver as part of a narcotics investigation. The subjective intention of the officers is irrelevant. Goodwin, 132 F.3d at 173. Therefore, the first prong of the Terry test is easily satisfied in this case.

While Defendant argues that no music is heard on the video, it is more likely than not that Defendant either turned off his music or reduced the volume to such an extent that it could not be heard outside of his vehicle once he realized he was being stopped by the police. The officers' testimony that they stopped Defendant for a loud music violation is credible, and it is supported by Defendant's guilty plea in city court on that very charge.

The court now turns to the second part of the Terry test – whether the officers' subsequent actions were reasonably related in scope to the circumstances which justified the interference in the first place. United States v. Chabezz, 993 F.2d 431, 435 (5th Cir. 1993). Under Brigham, the officers' subsequent actions may also be related to dispelling the officers' reasonable suspicion developed during the stop. Brigham, 382 F.3d at 507.

There was nothing improper about Officer Morrison walking up to the open passenger side window of Defendant's vehicle to check for other passengers while Officer Henry engaged Defendant in conversation on the driver's side of the vehicle. The vehicle was

located on a public street, the passenger window was down, and Officer Morrison was entitled to look inside the vehicle (while standing outside) to check the vehicle for additional occupants or contraband in plain view. A motorist has "no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Texas v. Brown, 460 U.S. 730, 740 (1983); United States v. Bradshaw, 102 F.3d 204, 211 (6th Cir. 1995); United States v. Sparks, 291 F.3d 683, 691-692 (10th Cir. 2002)(item could have been seen in plain view through the windows of the truck).

When Officer Morrison looked through the open window, he saw the loaded revolver and smelled a strong odor of marijuana. The smell of the marijuana and the location of the revolver in plain view, together with Defendant's denials of the existence of the weapon in the vehicle, gave rise to probable cause to search the vehicle for drugs. See, e.g., United States v. Lork, 132 Fed. Appx. 34 (5th Cir. 2005)(detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. McSween, 53 F.3d 684, 686-687 (5th Cir. 1995)(the smell of marijuana alone may be enough for a finding or probable cause); United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989) (the officer's detection of marijuana "in itself ...justified the subsequent search of [the defendant's] vehicle"); United States v. Henke, 775 F.2d 641, 645 (5th Cir.1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); United States v. Gordon, 722 F.2d 112, 114 (5th Cir.1983) (same); United States v. McLaughlin, 578 F.2d 1180, 1183 (5th Cir.1978) (same).

Even if the officers lacked probable cause to search the vehicle for drugs, they were justified in conducting a Terry frisk of the vehicle's interior for additional weapons. In Michigan v. Long, 463 U.S. 1032 (1983), the Supreme Court applied the principles of Terry to automobile searches. In that case, two police officers noticed a vehicle driving erratically and at an excessive rate of speed in a rural area late at night. After the officers saw the car swerve into a ditch, they stopped to investigate. Long, the driver, met the officers at the rear of the car and "appeared to be under the influence of something." Id. at 1036. After the officers repeatedly asked Long for his driver's license and registration, Long began walking toward the open door of his vehicle. The officers followed him and observed a hunting knife on the floorboard of the car. After seeing the knife, the officers subjected Long to a protective pat down, which revealed no weapons. One of the officers remained with Long at the rear of the vehicle while the other shined his flashlight in the car to look for other weapons. When the officer noticed something protruding from under the armrest, he entered the vehicle and found a pouch containing marijuana. Upholding the validity of the search, the Court held that "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Id. at 1049 (quoting Terry, 392 U.S. at 21). See also United States v. Maestas, 941 F.2d 273, 277-278 (5th Cir. 1991)("The nature of the facts and observations that may form the basis for a

permissible Long-type protective sweep are not intended to be applied in as mechanistic a manner.... Indeed, to require any one particular fact or observation to conform to a pre-established standard before it could be used to support a weapons search would undermine the notion that a police officer's reasonable suspicions may arise from the rational inferences of what he sees and hears."); United States v. Baker, 47 F.3d 691 (5th Cir. 1995)(officer noticed a box of bullets on floorboard of car; occupant denied knowledge of whereabouts of the gun).

Defendant's movement (albeit slight) toward the driver's door of the vehicle (when he was confronted with the presence of the weapon in plain view) was sufficient to create a rational inference that Defendant wanted to reenter his vehicle to access the revolver or some other weapon. In light of all of the circumstances they faced, the officer's frisk of the vehicle for additional weapons was proper.

When Officer Morrison found the crack cocaine during the Terry search of Defendant's vehicle, his seizure of that contraband did not violate the Fourth Amendment. An officer is not required to ignore illegal contraband that is discovered during a valid Terry search. Long, 463 U.S. at 1050. Moreover, once the initial discovery of the crack cocaine was made, the additional subsequent search of the vehicle on the side of the road was justified as a valid inventory search prior to impoundment of the vehicle.

**Summary**

The initial traffic stop of Defendant was justified by the officers' probable cause to believe that Defendant had violated the loud music ordinance for the City of Shreveport. It

was proper for Officer Morrison to look through the open window on the passenger side of Defendant's vehicle to check for additional occupants, and the location of the handgun in plain view inside the vehicle and the strong odor of marijuana emanating from the vehicle provided probable cause to search the vehicle for drugs. Defendant lied twice about the existence of the weapon, and when confronted, he made a slight move towards the driver's side door. At the very least, the circumstances justified a <u>Terry</u> frisk of Defendant's vehicle for additional weapons. The discovery of the illegal drugs inside the vehicle during that <u>Terry</u> frisk did not violate Defendant's rights.

Accordingly;

**IT IS RECOMMENDED** that Defendant's **Motion to Suppress (Doc. 12)** be **denied.**

## <u>Objections</u>

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Cr. P. 59(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Cr. P. 59(b)(2). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 28th day of June, 2006.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE